U.S. DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

JUN 12 2015

**FILED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:13-cr-00112-LM |
| | ) | |
| ALEXANDER GUZMAN | ) | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the United

States of America by its attorney, Donald Feith, the Acting United States Attorney for the

District of New Hampshire, and the defendant, Alexander Guzman, and the defendant's attorney,

Paul Garrity, Esquire, enter into the following Plea Agreement:

1.   The Plea and The Offense.

The defendant agrees to plead guilty to Counts One and Two of an Indictment from the

Southern District of Texas that charges him with: (1) conspiracy to distribute five kilograms or

more of cocaine, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and

841(b)(1)(A)(ii) and (2) possession of five kilograms or more of cocaine with intent to distribute,

in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii), and Title

18, United States Code, Section 2.   In exchange for the defendant's guilty plea, the United

States agrees to the sentencing stipulation identified in section 6 of this agreement.

2.   The Statute and Elements of the Offense.

**Count One**

Title 21, United States Code, Section 846 provides, in pertinent part:

> Any person who attempts or conspires to commit any offense defined in this
> subchapter shall be subject to the same penalties as those prescribed for the offense,

the commission of which was the object of the attempt or conspiracy.

21 U.S.C. § 846.

The defendant understands that the offense has the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

First, that the agreement specified in the indictment, and not some other agreement or agreements, existed between at least two people to distribute or possess with intent to distribute, controlled substances; and

Second, that the defendant willfully joined in that agreement;

*Pattern Jury Instructions: First Circuit Criminal Cases, Instruction 4.03 (1998).*

**Count Two**

Title 21, United States Code, Section 841(a)(1), provides, in pertinent part:

[I]t shall be unlawful for any person knowingly or intentionally to . . . distribute, or . . . or possess with intent to . . . distribute, a controlled substance.

21 U.S.C. § 841(a)(1).

The defendant understands that the offense has the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

First, that the defendant possessed cocaine, either actually or constructively;

Second, that the defendant did so with the specific intent to distribute the cocaine over which he had actual or constructive possession; and

Third, that the defendant did so knowingly and intentionally.

*Pattern Jury Instructions: First Circuit, Criminal Cases, Instructions 4.22 (1998).*

3. Offense Conduct.

The defendant stipulates and agrees that if this case proceeded to trial, the government

–2–

would prove the following facts and those facts would establish the elements of the offense beyond a reasonable doubt:

At all relevant times, the defendant was a truck driver and operated a business known as "NJB Transport." The defendant operated a car carrier and transported motor vehicles between various states. In addition to transporting motor vehicles, the defendant also transported controlled substances, including cocaine.

As part of an ongoing investigation of the defendant's conduct, federal law enforcement officers obtained court authorization to intercept wire and electronic communications over several cellular telephones being used by the defendant. The intercepted communications were primarily in Spanish and have been translated into English.

Based upon a series of intercepted telephone calls, law enforcement officers determined that the defendant had traveled to Houston, Texas in order to obtain a quantity of cocaine. On April 6, 2013, law enforcement officers began to intercept a telephone that the defendant had only activated a few days earlier on March 30, 2013. During a series of intercepted calls on April 6, 2013, the defendant arranged to meet with several individuals in Houston, Texas. During a call that evening, the defendant spoke with an individual who told him that, "The guy is going to swing by over there, be on the lookout so he can give it to you now in your hands." Later in the call, the defendant was told that there was a white Dodge and the defendant stated that he saw the vehicle.

Law enforcement officers in Texas had been conducting surveillance of the defendant, who was operating a car carrier with "NJB Transport" on the side. Surveillance officers observed the defendant (who was wearing a red shirt, red cap, and jeans) speaking on a cellular

–3–

telephone during the intercepted call.   A white Dodge vehicle then pulled up next to the defendant and the defendant got inside.   A few minutes later, the defendant exited the Dodge and got back in his vehicle and drove away while under law enforcement surveillance.

A few minutes later, the defendant was observed stopping at a truck stop in Houston. Shortly thereafter, the defendant called another individual and said "I'm going to take my clothes off.   A car is following me.   But I took that out of the truck and I threw it.   I threw it somewhere else."   A surveillance officer observed that the defendant had removed his red hat and red cap and was wearing a white shirt.   In a subsequent call, the defendant said, "I took out that bag and I threw it somewhere else, to the other side of the fence."   At the defendant's request, another individual came to the truck stop, picked up the defendant, and drove away.

Law enforcement officers went to the parking lot of the truck stop and located the defendant's vehicle.   On the other side of a fence near the defendant's vehicle, an agent recovered a black duffel bag that was later found to contain eight kilogram-shaped packages of cocaine.   The contents of the packages were later analyzed by a DEA chemist and found to contain approximately 7.95 kilograms of cocaine.

In an intercepted call later that evening, the defendant stated that he returned to the truck stop to look for the bag but could not find it.

In subsequent intercepted conversation, the defendant discussed the loss of the cocaine with multiple individuals, including some who accused him of stealing the cocaine.   For example, in a call with an unknown individual in Mexico on April 9, 2013, the defendant stated, "Do you think that I would dirty myself with eight cars?   Is my life worth eight cars?"   This was a coded statement indicating that the defendant would not jeopardize his life by stealing

-4-

eight kilograms of cocaine.

On August 21, 2013, several law enforcement officers went to the defendant's residence in Methuen, Massachusetts.   The defendant agreed to speak with investigators.   During their conversation, the defendant was shown photographs of the duffel bag and the approximately eight kilograms of cocaine that were recovered by law enforcement in Texas on April 6, 2013. The defendant stated that two individuals had sent him to Houston to pick up the cocaine and that he was going to be paid $8,000.00 to transport the cocaine in his car carrier from Texas to New York.   The defendant further stated that he met with two Mexican males in Texas who provided him with the black duffel bag that contained the cocaine.   The defendant stated that, after taking delivery of the cocaine, he noticed people following him and became nervous.   He further stated that he threw the duffel bag containing the cocaine over a fence because he did not want to be caught with the cocaine in his truck.

4.   Penalties, Special Assessment and Restitution.

The defendant understands that the penalties for each offense are:

A.     A  mandatory minimum term of ten (10) years and a maximum prison term of life imprisonment;

B.     A maximum fine of $10,000,000 (21 U.S.C. § 841(b)(1)(A)); and

C.     A term of supervised release of at least five (5) years.   The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release (18 U.S.C. §3583).

The defendant also understands that he will be required to pay a special assessment of $100 for each count of conviction at or before the time of sentencing; and that the Court may

–5–

order him to pay restitution to the victim of the offense, pursuant to 18 U.S.C. § 3663 or § 3663A.

    5.    <u>Sentencing and Application of the Sentencing Guidelines.</u>

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines.   The defendant further understands that he has no right to withdraw from this Plea Agreement if the applicable advisory guideline range or his sentence is other than he anticipated.

The defendant also understands that the United States and the United States Probation Office shall:

    A.    Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

    B.    Respond to questions from the Court;

    C.    Correct any inaccuracies in the pre-sentence report;

    D.    Respond to any statements made by him or his counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range under the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise as to the actual sentencing range under the advisory Sentencing Guidelines that the Court will adopt.

    6.    <u>Sentencing Stipulations and Agreements.</u>

Pursuant to Fed. R. Crim. 11(c)(1)(C), the parties agree to the following specific offense

characteristic under the advisory Sentencing Guidelines:

      A.     The offense involved 7.95 kilograms of cocaine.

The parties intend the above stipulation to be "binding" under Fed. R. Crim. P.

11(c)(1)(C). By using the word binding the parties mean that if the Court will not accept the

plea agreement under Fed. R. Crim. P. 11(c)(3)(A), the plea agreement is null and void and the

defendant will be allowed the opportunity to withdraw his guilty pleas.

The parties are free to make recommendations with respect to the terms of imprisonment,

fines, conditions of probation or supervised release, and any other penalties, requirements, and

conditions of sentencing as each party may deem lawful and appropriate, unless such

recommendations are inconsistent with the terms of this Plea Agreement.

      7.   Acceptance of Responsibility.

The United States agrees that it will not oppose an appropriate reduction in the

defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the

defendant's apparent prompt recognition and affirmative acceptance of personal responsibility

for the offense. The United States, however, may oppose any adjustment for acceptance of

responsibility if the defendant:

      A.     Fails to admit a complete factual basis for the plea at the time he is
             sentenced or at any other time;

      B.     Challenges the United States' offer of proof at any time after the plea is
             entered;

      C.     Denies involvement in the offense;

      D.     Gives conflicting statements about that involvement or is untruthful with
             the Court, the United States or the Probation Office;

      E.     Fails to give complete and accurate information about his financial status

to the Probation Office;

F.      Obstructs or attempts to obstruct justice, prior to sentencing;

G.      Has engaged in conduct prior to signing this Plea Agreement which
        reasonably could be viewed as obstruction or an attempt to obstruct
        justice, and has failed to fully disclose such conduct to the United States
        prior to signing this Plea Agreement;

H.      Fails to appear in court as required;

I.      After signing this Plea Agreement, engages in additional criminal conduct;
        or

J.      Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any

of the reasons listed above, the United States does not recommend that he receive a reduction in

his sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the

offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States

in the investigation or prosecution of his own misconduct by timely notifying the United States

of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing

for trial and permitting the United States and the Court to allocate their resources efficiently, the

United States will move, at or before sentencing, to decrease the defendant's base offense level

by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

    8.   Waiver of Trial Rights and Consequences of Plea.

The defendant understands that he has the right to be represented by an attorney at every

stage of the proceeding and, if necessary, one will be appointed to represent him.    The

-8-

defendant also understands that he has the right:

A.   To plead not guilty or to maintain that plea if it has already been made;

B.   To be tried by a jury and, at that trial, to the assistance of counsel;

C.   To confront and cross-examine witnesses;

D.   Not to be compelled to provide testimony that may incriminate him; and

E.   To compulsory process for the attendance of witnesses to testify in his defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the foregoing rights and that upon the Court's acceptance of his guilty plea, he will not be entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions about the offense, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers will be used against him in a prosecution for perjury or making false statements.

9.   Acknowledgment of Guilt; Voluntariness of Plea.

The defendant understands and acknowledges that he:

A.   Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because he is guilty;

B.   Is entering into this Plea Agreement without reliance upon any promise of benefit of any kind except as set forth in this Plea Agreement;

C.   Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

D.   Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

E.   Is completely satisfied with the representation and advice received from his

undersigned attorney.

10.   Scope of Agreement.

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority.   The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from his guilty plea.   The defendant understands such matters are solely within the discretion of the specific non-party government agency involved.   The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

11.   Collateral Consequences.

The defendant understands that as a consequence of his guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

12.   Satisfaction of Federal Criminal Liability; Breach.

The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal liability in the District of New Hampshire and the Southern District of Texas arising from his participation in the conduct that forms the basis of the indictment in this case.   The defendant understands that if, before sentencing, he violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails to appear for sentencing, the United States may consider such conduct to be a breach of the Plea Agreement and may withdraw therefrom.

−10−

13.  Waivers.

A.     Appeal.

The defendant understands that he has the right to challenge his guilty plea and/or sentence on direct appeal.   By entering into this Plea Agreement the defendant knowingly and voluntarily waives his right to challenge on direct appeal:

1.     His guilty plea and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; and

2.     The sentence imposed by the Court if within, or lower than, the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

B.     Collateral Review

The defendant understands that he may have the right to challenge his guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255.   By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

1.     His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; and

2.     The sentence imposed by the Court if it falls within, or lower than, the guideline range as determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his right to collateral review does not operate to waive a

−11−

collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel. The defendant's waiver of his right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

    C.    Freedom of Information and Privacy Acts

The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

    D.    Appeal by the Government

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government to pursue an appeal as authorized by law.

14. No Other Promises.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

15. Final Binding Agreement.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

16.    Agreement Provisions Not Severable.

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

DONALD FEITH
Acting United States Attorney

Date:  6/12/15

By: _____
John J. Farley
Assistant U.S. Attorney
N.H. Bar No. 16953
53 Pleasant St., 4th Floor
Concord, NH 03301
John.Farley@usdoj.gov

−13−

The defendant, Alexander Guzman, certifies that he has read this 14-page Plea Agreement and that he fully understands and accepts its terms.

Date: 6/9/15

Alexander Guzman, Defendant

I have read and explained this 14-page Plea Agreement to the defendant, and he has advised me that he understands and accepts its terms.

Date: 6/9/15

Paul Garrity, Esquire
Attorney for Alexander Guzman

### Interpreter's Oath

I, EDWIN MOSQUERA, a Spanish language interpreter, do solemnly swear or affirm that, to the best of my ability, I have interpreted this Plea Agreement accurately and faithfully.

Signed: _____     Date: 6-9-15

−14−